**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KIRK BRISBIN d/b/a )
SPECIALTY MANUFACTURING )
  )
     Plaintiff )
  )
     v. )   CA 99-1902
  )   Magistrate Judge Caiazza
  )
SUPERIOR VALVE COMPANY )
  )
     Defendant. )

**MEMORANDUM OPINION**

In this diversity action filed pursuant to 28 U.S.C. § 1332 and before this court on remand, Kirk Brisbin, the owner and sole employee of Specialty Manufacturing, seeks damages from Superior Valve Co. ("Superior"),[1] for the anticipatory breach of three contracts which obligated Superior to buy industrial parts made in Korea on behalf of and sold by Specialty. The court is well acquainted with this matter, having conducted a six day bench trial in January 2002. At the conclusion of that trial, the court found in favor of Specialty with respect to the breach of the two written contracts, assessing lost profit damages in the amount of $746,675.00. The court also awarded damages in

---

1.Until five months after the contracts underlying this action were made, Superior Valve did not have a separate legal identity.  In October 1998, Harsco Corporation acquired Superior from Amcost Industrial Corp. and consolidated Superior's assets with its Sherwood Gas Control Group. At the time of the acquisition, Harsco became the successor in interest to the Specialty - Superior contracts.

connection with a third (oral) agreement,[2] finding that Specialty was entitled to $12,200 based on the doctrine of promissory estoppel. Both parties appealed to the Court of Appeals for the Third Circuit. Superior contested this court's findings with respect to liability and its assessment of damages for lost profits. In its cross appeal, Specialty argued that it was entitled to prejudgment interest on the damage award, and to damages for lost profits on the oral contract. In Brisbin v. Superior Valve Co., 398 F.3d 279 (3d Cir. 2005), the Court of Appeals affirmed this court's finding that Superior had breached the written contracts, and did not disturb the assessment of reliance damages with respect to the oral contract. The Court of Appeals did, however, reverse this court's calculation of lost profits damages, concluding that the award was too speculative and should be reexamined on remand.

Following a meticulous review of the record in light of the Court of Appeals' identification of questions to be resolved on remand, this court is constrained to conclude that the record cannot support the award of damages for lost profits. The court must also decline Specialty's invitation to consider the availability of reliance damages as an alternative to lost profits damages. The record establishes that this issue was not raised on appeal and was waived as a result. The court will,

---

2.Although the Court of Appeals concluded that an oral agreement was never formed, for ease of reference we continue to use the terms "oral contract" or "oral agreement" to refer to discussions surrounding the in-line valves.

however, calculate prejudgment (and postjudgment) interest on the award of reliance damages already made.

Because the parties are familiar with the facts as recounted at trial and in earlier opinions, the court will move directly to the tasks placed before it by the Court of Appeals, referring to the facts only as necessary to provide context for its conclusions of law.

## A. Lost Profits

The parameters of Pennsylvania law regarding recovery of lost profits for breach of contract are clear. Lost profits are available to the wronged party as an element of consequential damages. National Controls Corp. v. National Semiconductor Corp., 833 F.2d 491, 495 (3d Cir. 1997)(citing 13 PA. Cons. Stat. §2714(c)). The injured party bears the burden of establishing entitlement to and the extent of lost profits. Delahanty v. First Pa. Bank, N.A., 464 A.2d 1243, 1257. (Pa. Super. 1983). In order to satisfy that burden, the injured party must demonstrate that evidence in the record is sufficient to establish the extent of damages with reasonable certainty. Advent Systems, Ltd. v. Unisys Corp., 925 F. 2d 671, 680 (3d Cir. 1991)(citing Delahanty, 464 A.2d at 1258). Although mathematical precision is not required, there must be evidence from which damages can be calculated without engaging in speculation. Advent, 925 F.2d 681. Typically, the extent of lost profits may be established by reference to evidence of past profits, profits made by others

similarly situated, or through expert testimony.  <u>Massachusetts Bonding & Ins. Co. v. Johnston & Harder, Inc.</u>, 343 Pa. 270 (1941).

Calculating the amount of lost profits in this matter was problematic. Because Specialty was a relatively new venture, it did not have a history of engaging in business of the type transacted here; there was no established course of dealing between Specialty and Superior. Furthermore, Specialty did not offer evidence relating to general practice in the industry, or expert testimony bearing on damages.  Recognizing, however, that Specialty had been injured, and that Brisbin had expended substantial effort to salvage the Specialty-Superior relationship in the face of Superior's almost total failure to cooperate, this court attempted to make Specialty whole by calculating its lost profits with respect to the most concrete evidence in the record.

The court considered the shell contract first, concluding that Specialty was entitled to lost profits totaling $585,425.00. This figure was derived by determining Specialty's cost of manufacturing the shells, $228,525.00 for a full year of production, and subtracting that cost from the amount that Superior was obligated to pay, $345,610.00, for the same year. The court concluded that Specialty's profit for each of the five years of the shell contract would have been $117,085.00, bringing total lost profits on this contract to $585,425.00.

Lost profits on the 1065 valve contract were similarly

4

determined.  Superior committed to pay Specialty $246,250 during
the first year of the contract.  Specialty's manufacturing costs
were $192,500.00, leaving a one year profit of $53,750.00.  This
amount was multiplied by three years, the term of the contract,
for a total lost profits award of $161,250. Concluding that these
awards were sufficiently certain to satisfy the requirements of
Pennsylvania law, this court noted that it had ascertained the
awards based on the only evidence in the record pertaining to
pricing, i.e., the prices fixed in the contracts signed by the
parties.

The Court of Appeals determined that these lost profits
calculations were flawed: "[A]s of the date of Superior's breach
(approximately fifteen months into the contracts), Specialty had
not yet begun full-time production on either the 1065 valves or
any of the shells." Brisbin, 398 F.3d at 290.  As a result, the
Court of Appeals concluded that it was unreasonable for this
court to have extended the contracts beyond their expiration
dates to allow Specialty to recover "its full expectation
interest." Id.  The following observation made by the Court of
Appeals is well taken:


        The contracts neither provide for development time nor
        guarantee a minimum of full time production. Sympathy aside,
        it is axiomatic that a court may not rewrite the clear
        provision of a contract to make it more reasonable
        or to protect a party against an unwelcome result.

Id.

Despite this error in awarding Specialty full expectation damages, the Court of Appeals stated that Specialty might yet be entitled to the recovery of lost profits provided that the record made at trial contained specific evidence regarding the date upon which each contract item would have gone into full time production. The Court wrote that if Brisbin could establish "the date full-time production would have begun for each project, he [could] recover lost profits for the valves and shells from that date through May 27, 2001 and May 27, 2002, respectively." Id.

On remand, this court has been directed to examine the record in order to determine whether a date for full-time production of valves or shells can be ascertained.  The court has undertaken this review of the record, and does not find any way to identify a definite production date for any of the contract items. In fact, the court is convinced that it would be impossible for Specialty to establish this date even if the record could be reopened.

First, as the court has noted, Specialty has never before undertaken work of this type and cannot rely upon its course of performance to fix a production date.  Furthermore, Specialty had, at best, only some control over delays in the production process.  Much of the delay was ultimately attributable to Superior's imposition of additional testing requirements, its failure to specify alleged deficiencies in the samples produced, its claim to have lost approvals and test results, and its

6

overall refusal to communicate effectively with Specialty.  Under the terms of both contracts, which heavily favored the drafter, Superior, production of the 1065 valves or shells could have been delayed indefinitely.  As even Specialty admits in its Memorandum of Law Following Remand, "[T]he time period that full production would have begun [under either contract] is difficult to determine. (Memo at 2).

According to the Court of Appeals' analysis, determining a date of production for each product is essential to the calculation of a lost profits award. Given all of the variables affecting Specialty's ability to produce a finished product, the court is convinced that establishing a definite production date is impossible. This inability to fix even one date of production is entirely fatal to Specialty's claim for lost profits.  We need not reach the other questions posed by the Court of Appeals. For example, whether Specialty's Korean subcontractor would have been able to source component parts necessary for the manufacture of the 1065 valves is irrelevant.  Even had a reliable source been identified in the record, Specialty would not be able to establish a definite date of production.

The same is true for the other issues which the Court of Appeals asked this court to consider on remand: "when, [if ever] the valves could have met Superior's quality control requirements," Brisbin, 398 F.3d at 292, whether lost profits damages for breach of the 1065 contract should have been determined using a valve sales estimate of 8-10,000 instead of

the 25,000 originally contemplated, and whether Superior had granted First Article approval for 4" or 5" shells. Id. Regardless of how these questions are answered, the record will not establish when production of any of the valves or shells would have begun.  Accordingly, the court must conclude, as the Court of Appeals predicted, that the record does not establish lost profits with the requisite certainty.  Lost profits cannot comprise any part of a damage award in this case.

B. <u>Availability of Reliance Damages as an Alternative to the Award of Lost Profits</u>

Anticipating that this court's award of lost profit damages for breach of the written contracts could not survive on remand, Specialty, in its Reply Brief on Remand, contends that: "If the Court finds that the evidence cannot establish when full-time production of the P-1065 valves and shells would have commenced, Brisbin is entitled to his reliance damages." (Br. at 3).

Under general principles of contract law, damages for breach of contract are assessed according to three alternative theories: loss of profits or expectation damages; reliance damages; and restitution. <u>Trosky v. Civil Service Comm'n, City of Pittsburgh</u>, 539 Pa. 356, 363(1995). The Court of Appeals has described the difference between expectation damages and reliance damages as follows:

> Although expectation damages, or damages for lost profits, are preferred, where a court cannot measure lost profits with certainty, contract law protects an injured party's

8

> reliance interest by seeking to achieve the position that it
> would have obtained had the contract never been made,
> usually through the recovery of expenditures actually made
> in performance or in anticipation of performance.

ATACS Corp. v. Trans World Communications, Inc., 155 F.3d 659,

669( 3d Cir. 1998).[3]

Because its lost profits cannot be determined, Specialty

asks that it be reimbursed for substantial expenditures made in

reliance on the written contracts. Reluctant though this court

may be to deny Specialty's entitlement to reliance damages -

especially since there is no doubt that Specialty incurred

significant development and preparation expenses in connection

with the 1065 and shell contracts - it must do so. That the court

is sympathetic to the situation in which Specialty finds itself,

and is aware that the unavailability of reliance damages appears

to work a hard result, the court is convinced that Specialty

waived any entitlement to reliance damages by failing to preserve

on appeal its claim to reliance damages as an alternative to

damages for lost profits.

The law governing which issues remain viable following an

appeal and remand simply is not elastic enough to cover the

somewhat unusual situation presented here. In reaching this

conclusion, the court has taken into account every part of the

record before it, reviewing in detail the notices of appeal, the

---

3. The third theory, restitution, requires that the non-breaching
party "disgorge the benefit he has received by returning it to the
party who conferred it." Trosky, at 363(quoting Restatement (Second)
of Contracts, Section 344, Comment a). This theory of recovery is not
at issue here.

appellate briefs, the instructions articulated by the Court of Appeals and, of course, the law. Each of these factors supports the finding that Specialty's request for reliance damages as an alternative to lost profits came too late.

During and immediately following trial, Specialty sought to convince this court that it was entitled to lost profits _and_ reliance damages on each of the three contracts alleged to have been breached.  Recognizing that lost profits and reliance damages are alternative remedies, the court awarded only damages for lost profits in connection with the written contracts, and only reliance damages pursuant to the oral agreement.

Superior then appealed and Specialty cross appealed.  Each party filed a general notice of appeal challenging this court's final judgment and all of the prior orders and judgments in this case. The parties next filed appellate briefs. Nowhere in that exchange of briefs did Specialty contend that it was entitled to reliance damages for breach of the written contracts either in addition to lost profits _or_ in the alternative. It argued instead that this court's original assessment of lost profits should be affirmed.

The Court of Appeals reached a similar conclusion, summarizing the issues delineated by Specialty on appeal as follows: "Specialty raises two issues on cross-appeal. First, it argues that lost profits, not just reliance damages, are recoverable _for the in-line valves project_.  Second, it claims it is entitled to prejudgment interest on the damages awarded in its

favor [at trial]. Brisbin, 398 F.3d at 286 (emphasis added).
Clearly, Specialty asked that the Court of Appeals award lost
profits and reliance damages pursuant to the oral agreement. It
is unclear why it did not ask that reliance damages be calculated
to supplement the award of lost profit damages on the written
contracts, or as an alternative measure of damages should the
lost profits award be reversed.

Fed. R. App. P. 28(a)(5),(9) and (10) requires that in order
to have a claim considered, the appellant is required to list the
issues raised on appeal, present an argument in support of them,
and set forth a short conclusion stating the "precise relief
sought." The Court of Appeals has stressed the importance of
framing issues clearly and thoroughly, writing:

> We have repeatedly emphasized that failure to raise
> a theory as an issue on appeal constitutes a waiver
> because consideration of that theory would vitiate
> the requirement of the Federal Rules of Appellate Pro-
> cedure and our own local rules that, absent extraordinary
> circumstances, briefs must contain statements of all
> issues presented on appeal, together with supporting
> arguments and citations.

I.R.S. v. Gaster, 42 F.3d 787, 792(3d Cir. 1994)(quoting
International Raw Materials, Ltd. v. Stauffer Chem. Co., 978 F.2d
1318, 1327 n. 11)(3d Cir. 1992)).

Specialty does not contend and this court cannot fathom that
special circumstances prevented it from raising this issue at the
outset of the appellate process. Specialty attempts to avoid the
clear import of the rules and the case law by stating that
questions relating to reliance damages were posed by the Court of

11

Appeals at oral argument. Specialty buttresses this argument by contending that the Court's opinion directs this court to evaluate the availability of reliance damages. Neither of these arguments has merit.

First, Specialty has neglected to provide this court with transcripts of any colloquy with the Court of Appeals relevant to reliance damages under the written contracts. We would expect that there was some discussion of reliance damages in the context of the oral agreement, but have no way of knowing whether the written contracts were implicated. Furthermore, the court does not read the opinion of the Court of Appeals to direct or even hint that analysis of reliance damages as an alternative to damages for lost profits was contemplated.

The Court of Appeals' opinion is very specific. It is absolutely clear that this court was directed to re-examine the lost profit awards.  The Court provided detailed questions to be asked and answered during that re-examination.  In contrast, the Court of Appeals' discussion of reliance damages was brief and was confined to the oral agreement: "[T]he Magistrate Judge held that the evidence was insufficient to award lost profit damages *for the in-line valves project*, but awarded reliance damages instead." Brisbin, at 285.

The only other reference to reliance damages is set forth in the final section of the Court of Appeals' opinion addressing the availability of prejudgment interest.  There, the Court wrote:

> As set out above, the Magistrate Judge should award

12

> lost profits on remand only if he makes findings as to
> when production for the 1065 valves and the shells would
> have begun.  If those findings can be made, prejudgment
> interest may be calculated based on prorated monthly
> production figures (derived from findings as to annual
> production amounts). But if no lost profits are awarded,
> Specialty would be entitled to prejudgment interest on its
> reliance damages, beginning on the date of contract
> repudiation.

Id., at 294 (citing Fernandez v. Levin, 519 Pa. 375, 379 (1988)).

Specialty clings to this proverbial slender reed in an attempt to

convince this court that the availability of reliance damages for

breach of the written contracts was not waived. Relying on that

final paragraph in the Court of Appeals' opinion, Specialty

argues that the language used "expressly" or impliedly requires

that Specialty be given reliance damages where lost profit

damages are too speculative.

This court is not persuaded by this argument.  When it

wanted this court to act on remand, the Court of Appeals spoke

clearly.  Its instructions were detailed and unequivocal. There

is no corresponding clear direction with respect to reliance

damages.  We are convinced that the only references to reliance

damages made by the Court of Appeals were made in the context of

the oral agreement. More fundamentally, this court, taking into

account the entire record, seriously doubts that the Court of

Appeals was even aware that Specialty was seeking reliance

damages for breach of the written contracts. [4] The court does not

_____

4. The court notes that even had the issue of reliance damages for
breach of the written contracts been preserved and the issues remanded
in order for this court to fix the amount of those damages, the court

13

believe that it was directed to calculate reliance damages attributable to the written contracts. Furthermore, any assessment of reliance damages based on the record as it stands would be at least as specultive as the award for lost profits. Accordingly, the court will not consider this issue further.


### C. The Award of Interest

The parties do not contest that Specialty is entitled to reliance damages related to the oral agreement. The Court of

---

would have concluded that the record is altogether insufficient to permit calculation of reliance damages. Typically, it is easier for a plaintiff to prove out of pocket losses than it is to prove lost profits, especially where the venture is a new one. As was the case with lost profits the proof of out of pocket losses is far from certain and cannot support a damage award.

Brisbin's claim for reliance damages was based entirely on a chart purporting to show total expenditures incurred in reliance on all three of the contracts. (Brisbin did offer some testimony which reiterated the information set forth in the chart.) As a result, it is impossible to tell which portion of the expenditures were incurred in reliance on the written contracts. Also problematic is the fact that Brisbin testified that he was not regularly paid at an hourly rate, but that he had determined an hourly rate for this matter by relying on the award of lost profits, a number which has already been deemed speculative. Brisbin also failed to submit time records documenting hours spent in furtherance of the written contracts. He admits that his calculation of the hours worked was "approximate." His expenses for trips to and from Korea are not broken down so as to allow the court to exclude expenses for trips taken before the contracts were executed and after the breach. Work for other clients done on these trips was not deducted from trip expenses, and there was no reduction in the hours worked to reflect efforts made on behalf of those clients. The same is true for air travel, hotel, telephone, food and rental car charges. The chart lumps expenses associated with thirteen trips to Korea, about half of which are not allocable to Superior, with eight trips allegedly made from Brisbin's home to Superior's offices. The chart also includes a category purporting to show damages sought by Korean manufacturers as a result of Brisbin's inability to complete his contract with Superior. How these break down, or what exactly they are for, is not specified.

14

Appeals held that Specialty is also entitled to prejudgment interest on that total.  There is some confusion in the record regarding the amount of Specialty's reliance award.  Different totals appear in different documents, sometimes without explanation. On appeal, Specialty claimed $14,827.90 in reliance damages, and Superior contends that reliance damages should be capped at that amount.  Because the court is convinced that the $14,827.90 figure can be supported by evidence in the record, it will fix Specialty's reliance damages at that amount, increased by $2,542.27 in prejudgment interest calculated from the date of breach, September 8,1999. We have also calculated and included postjudgment interest in the amount of $3,363.63accruing from the date of the original judgment, July 17, 2002.  Specialty is owed a total of $20,733.80.

### D. <u>Conclusion</u>

It is a rare case indeed in which a plaintiff who has undeniably suffered injury as a result of another's breach of a written contract does not have a remedy against the party who has wronged him.  After reviewing the state of the record pertaining to damages, however, the court regrets, but is convinced that this is one of those rarities.

For the foregoing reasons, it is hereby **ORDERED** that the Defendant remit to the Plaintiff forthwith, total damages in the amount of $20,733.80.

15

The Clerk is directed to mark this case closed.

October 7,2005

                                    s/Francis X. Caiazza
                                    Francis X. Caiazza
                                    U.S. Magistrate Judge

 cc:
George E. McGrann, Esq.
Schnader, Harrison, Segal &
Lewis
120 Fifth Avenue
Suite 2700, Fifth Avenue Place
Pittsburgh, PA 15222-3010


Mark A. Eck, Esq.
William J. Wyrick, Esq.
Meyer, Darragh, Buckler,
Bebenek & Eck
600 Grant Street
Suite 4850
Pittsburgh, PA 15219

Samuel Goldblatt, Esq.
Allison P. Gioia, Esq.
Nixon Peabody
1600 Main Place Tower
Buffalo, NY 14202